UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLONY HILLS CAPITAL, LLC; TPI COMMUNITIES I, LLC; DAVID KAUFMAN; and GLENN HANSON,<br><br>     Plaintiffs,<br><br>     v.<br><br>PF HOLDINGS LLC; JPC CHARITIES; PF HOLDINGS MANAGEMENT LLC; LIEB PURETZ; ARON PURETZ; CHAIKEL PURETZ; PURE CHARITY FUND; and JOHN DOES 1-10,<br><br>     Defendants. | Case No. 1:17-cv-04993<br><br><br><br>**COMPLAINT** |

Plaintiffs Colony Hills Capital, LLC, TPI Communities I, LLC, David Kaufman, and Glenn Hanson (collectively, "Colony Hills"), as and for their complaint against defendants PF Holdings LLC, JPC Charities, PF Holdings Management LLC, Lieb Puretz, Aron Puretz, Chaikel Puretz, Pure Charity Fund, and John Does 1-10 (collectively, "JPC" or "Defendants"), allege as follows:

**INTRODUCTION**

1. For more than two years, Colony Hills devoted an inordinate amount of time and resources, including several millions of dollars, and focused almost exclusively on structuring and obtaining purchase rights in connection with a complex real estate deal involving numerous residential rental properties in Indianapolis, Indiana (the "Transaction," which is further defined below). The Transaction could not exist but for Colony Hills' vision and its devotion of substantial resources.

2. Defendants, which had initially expressed an interest in providing financing to Colony Hills in connection with the Transaction, eventually articulated a strong desire to purchase Colony Hills' rights related to the Transaction and under a purchase contract with the entities selling rights related to the properties.

3. In effect, Defendants sought to step in Colony Hills' shoes to enjoy the benefits of the opportunity that Colony Hills created at tremendous expense to Colony Hills. In exchange, Defendants promised Colony Hills substantial compensation, including millions of dollars in cash payments upon Defendants' closing on the properties, plus, *inter alia*, a share of future profits.

4. Unbeknownst to Colony Hills, Defendants had never intended to comply with their obligations under their agreement with Colony Hills. Defendants lied to Colony Hills about their intentions in order to induce Colony Hills to transfer and forbear on exercising its rights regarding the properties and Transactions.

5. Through this action, Colony Hills seeks recovery of monetary damages from Defendants' fraudulent and wrongful conduct.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between citizens of different states.

7. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1) and (2) because certain defendants reside or have a principal place of business in the State of New York and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

# PARTIES

### A. Plaintiffs

8. Plaintiff Colony Hills Capital, LLC ("Colony Hills Capital"), is a Massachusetts limited liability company with its principal place of business at 2040 Boston Road, Wilbraham, Massachusetts.

9. Plaintiff TPI Communities I, LLC ("TPI"), is a Florida limited liability company with its principal place of business at 2001 W. Blue Heron Blvd., Riviera Beach, Florida.

10. Plaintiff David Kaufman is an individual who resides in Massachusetts. Kaufman is the President and a member of Colony Hills Capital. Further, Kaufman is a "payee" under one of the agreements that is the subject matter of this case.

11. Plaintiff Glenn Hanson is an individual who resides in Massachusetts. Hanson is the Chief Executive Officer and a member of Colony Hills Capital. Further, Hanson is a "payee" under one of the agreements that is the subject matter of this case.

### B. Defendants

12. Defendant PF Holdings LLC ("PF Holdings") is a New York limited liability company with an address at 1223 East 13th Street, Brooklyn, New York.

13. Defendant JPC Charities is an Ohio not-for-profit corporation with an address at 1223 East 13th Street, Brooklyn, New York.

14. Defendant PF Holdings Management LLC ("PF Holding Management") is a New York limited liability company with an address at 1223 East 13th Street, Brooklyn, New York.

15. Defendant Lieb Puretz is an individual with an address at 1223 East 13th Street, Brooklyn, New York. During the period relevant to this Complaint, defendant Lieb Puretz was an officer and owner of PF Holdings and other entity defendants, and also was signatory, payor,

and obligor with respect to the agreements that serve as the bases for Plaintiff's Complaint.

16. Defendant Aron Puretz is an individual who resides in Lakewood, New Jersey. During the period relevant to this Complaint, defendant Aron Puretz was an officer and owner of PF Holdings and other entity defendants, and also was signatory, payor, and obligor with respect to the agreements that serve as the bases for Plaintiff's Complaint.

17. Defendant Chaikel Puretz resides in Lakewood, New Jersey. During the period relevant to this Complaint, defendant Chaikel Puretz was an officer and owner of PF Holdings and other entity defendants, including Pure Charity Fund, and also was signatory, payor, and obligor with respect to the agreements that serve as the bases for Plaintiff's Complaint.

18. Defendant Pure Charity Fund is a Georgia non-for-profit corporation with an address at 428 Clifton Avenue #44, Lakewood, New Jersey. Upon information and belief, Pure Charity Fund is controlled by Chaikel Puretz.

19. Defendants John Does 1-10 are individuals or entities whose names and addresses are unknown.

## **FACTS**

20. Between about 2012 and 2014, Colony Hills negotiated and secured the contractual right (the "Purchase Rights") to purchase certain rental properties in Indianapolis, Indiana, from the Foundation for Affordable Housing and its affiliated entities (collectively, "FARH") (the "Transaction"). The properties that were part of the Transaction included the rental properties known as Capital Place, Covington Square, Estates at Crystal Bay, Fox Club, Lakeside Pointe, Woodhaven Park, and Woods at Oak Crossing (the "Properties").

21. During the span of those roughly two years and beyond, Colony Hills spent hundreds of thousands of dollars on, among other things, inspections and on-site reviews, due

diligence, property appraisals, surveys, financial analyses, environmental inspections and review, air testing, legal review of zoning regulations, and professionals' fees (the "Transactional Expenses").

22. Additionally, Colony Hills devoted a substantial amount of its own resources (the "Internal Costs") in connection with the Transaction.

23. Taken together, Colony Hills' Transactional Expenses and Internal Costs amounted to at least $2.6 million.

24. The terms of the Transaction were memorialized in an April 2014 purchase agreement between Colony Hills and FARH (the "CHC-TPI Purchase Agreement").

25. In or around September 2014, Colony Hills and JPC entered into an agreement whereby Colony Hills would transfer the Purchase Rights to the Properties to JPC (the "CHC-JPC Agreement"). Several of the key terms of the CHC-JPC Agreement were outlined in a memorandum of understanding (the "2014 MOU").

26. The 2014 MOU was executed by David Kaufman, President of Colony Hills Capital, and Lieb Puretz, on behalf of PF Holdings and its affiliates.

27. The 2014 MOU provided that, in exchange for the exclusive right to purchase the Properties, Defendants would pay to Colony Hills:

   1) $5,000,000 cash at closing;

   2) $5,000 monthly during the "hold period"; and

   3) 20 percent of the gross gain in fair market value, calculated based on a formula set forth in the 2014 MOU, over the $85,138,837 purchase price of the Properties.

28. After entering into the CHC-JPC Agreement but prior to the execution of the 2014 MOU, David Kaufman, President of Colony Hills Capital, explicitly told Lieb Puretz and Aron Puretz, among others, that Colony Hills had "spent a huge amount of time and a significant

5

sum of money taking this deal from concept, into contract, through Due Diligence, and into a position to close by year end."

29. Through emails and during conversations, Colony Hills, through Kaufman and others, clearly communicated to Defendants that Colony Hills had invested substantial funds, resources, and time in connection with the Transactions and the CHC-JPC Agreement. For instance, in one email to Defendants sent in September 2014, Kaufman explained that Colony Hills' investment in the CHC-JPC Agreement included a "large amount of time and significant working capital" and that they therefore needed Defendants' reassurance, which Defendants provided, to continue to move forward.

30. After Defendants acquired the Purchase Rights and made certain promises and representations to Colony Hills, including in the CHC-JPC Agreement and 2014 MOU, Colony Hills allowed the CHC-TPI Purchase Agreement to expire and thus terminate.

31. In allowing the CHC-TPI Purchase Agreement to terminate, Colony Hills specifically relied upon the CHC-JPC Agreement and the 2014 MOU.

32. Colony Hills' reasonable and justified expectation – indeed, the promise and agreement – was that it would be compensated for transferring the Purchase Rights to Defendants and foregoing the opportunity to purchase and reap the benefits of the Properties for itself.

33. The termination of the CHC-TPI Purchase Agreement was expressly acknowledged in a Letter of Intent executed by Aron Puretz on behalf of Defendants (the "JPC LOI").

34. The JPC LOI stated that "[FARH] and [Defendants] acknowledge the existence of the [CHC-TPI Purchase Agreement] between [FARH] and TPI covering the sale of the

6

Properties which prior contract . . . has terminated."

35. The JPC LOI also provided that "neither [FARH nor Defendants] desires to enter into a transaction which excludes TPI from payment of compensation in an amount and manner that is satisfactory to TPI."

36. Consequently, and implicitly recognizing the value of Colony Hills' contributions and services in connection with the Properties, the JPC LOI set forth the following:

> (a) a condition of [FARH] and [Defendants] entering into the Contract of Sale is a compensation agreement by and between [Defendants] and TPI . . . which provides for payment to TPI at Closing (the "TPI Compensation"); and (b) a condition of Closing shall be simultaneous payment to TPI of the TPI Compensation.

37. On or about July 31, 2015, JPC and FARH entered into a Membership Sale and Acquisition Agreement (the "Sale Agreement") through which JPC agreed to acquire the Properties by purchasing FARH's membership interests in the Properties.

38. The Sale Agreement explicitly recognized Colony Hills' right to be properly compensated, stating that "JPC shall pay any amounts owing to TPI relating to the transactions contemplated by this Agreement."

39. In or around late October 2015, JPC and Colony Hills appeared to reach an agreement concerning compensation to be paid to TPI in connection with the Sale Agreement (the "TPI Compensation Agreement").

40. Under the TPI Compensation Agreement, the "Payor" was deemed to include JPC Charities, Aron Puretz, Chaikel Puretz, Lieb Puretz, PF Holdings, and any other entity owned or controlled wholly or in part by Aron Puretz, Chaikel Puretz, Lieb Puretz, or PF Holdings.

41. Under the TPI Compensation Agreement, the "Payee" was deemed to include TPI, Colony Hills Capital, David Kaufman, Glenn Hanson, and any other entity owned or controlled wholly or in part by Kaufman, Hanson, TPI, or Colony Hills Capital.

7

42. On the condition that the Payor succeeded to the ownership of the membership interests of FARH in the Properties, the TPI Compensation Agreement called for Payor to pay Payee $2.1 million, or a pro rata share of that amount if Payor succeeded to less than all of the membership interests.

43. The TPI Compensation Agreement was executed by JPC Charities, PF Holdings, Aron Puretz, and Lieb Puretz.

44. At or about the same time as the TPI Compensation Agreement, Aron Puretz and Lieb Puretz each delivered to Colony Hills an executed promissory note (each a "Promissory Note" and together the "Promissory Notes") for the compensation that would be due to Colony Hills under the TPI Compensation Agreement.

45. The Promissory Notes required Aron Puretz, Chaikel Puretz, and Lieb Puretz, as individuals, to pay the compensation due under the TPI Compensation Agreement in the event that JPC Charities or its nominee failed to pay TPI at the time of the closing of the Sale Agreement.

46. The Promissory Notes provided for the accrual of interest on the unpaid amount from the day following the closing until payment in full at the rate of seven percent per annum.

47. On or about February 3, 2016, Defendants contended that the TPI Compensation Agreement and the Promissory Notes were void and of no force and effect. Thus, Defendants are estopped from contending that the TPI Compensation Agreement or the Promissory Notes superseded or amended the CHC-JPC Agreement as outlined in the 2014 MOU.

48. In particular, Defendants claimed that an email sent on their behalf on or about October 30, 2016, constituted an offer that was never accepted by Colony Hills. In that email, which had attached to it the TPI Compensation Agreement and the Promissory Note, Defendants

stated that "the current signatories have the right to withdraw their 'offer' of an agreement until such time as TPI, Colony, David and Glenn execute and deliver the fully executed TPI Compensation Agreement to my [attention]."

49. Stating that "TPI, Colony, David and Glenn have failed to fully execute and deliver the TPI Compensation Agreement, and [that] the time for TPI, Colony, David and Glenn to execute and deliver the TPI Compensation Agreement has expired," Defendants communicated their belief that the TPI Compensation Agreement and the Promissory Notes were unenforceable.

50. Accordingly, Defendants purportedly authorized their counsel "to negotiate an agreement with the TPI group minus certain flaws in the previous draft."

51. However, no new agreement was negotiated.

52. On or about February 18, 2016, JPC and FARH closed on the Sale Agreement.

53. As a result of the closing of the Sale Agreement, JPC acquired all of the membership interests of FARH in the Properties.

54. JPC thus realized and reaped the benefits transferred and sold to it by Colony Hills.

55. At or about the time of the closing of the Sale Agreement, Defendants paid $1.8 million to Colony Hills Capital, notwithstanding their earlier stated position that the TPI Compensation Agreement was of no force and effect.

56. As the TPI Compensation Agreement called for a payment of $2.1 million, Colony Hills confronted Defendants about the difference.

57. Defendants responded by taking the position that the $1.8 million payment was a mistake.

58. Defendants went so far as to threaten legal action to recover the $1.8 million.

59. Defendants' conduct shows that they never intended to pay Colony Hills the full compensation agreed upon in the CHC-JPC Agreement and 2014 MOU.

60. Rather, Defendants concealed their true motives during negotiations with Colony Hills in order to induce Colony Hills to give them the Purchase Rights to the Properties.

61. JPC received substantial consideration from Colony Hills, including but not limited to (1) the Purchase Rights, which included the opportunity to buy the Properties and enjoy the gains derived from that purchase – an opportunity which Defendants ultimately took advantage of, and (2) the benefits of Colony Hills' efforts to consummate the Transaction and to prepare to exercise the Purchase Rights, which required Colony Hills to incur the Transactional Expenses and Internal Costs.

62. In exchange for the Purchase Rights, Defendants agreed to pay Colony Hills $5.0 million at closing, among other compensation.

63. To date, Defendants have paid only $1.8 million. An additional $3.2 million is owed to Colony Hills.

64. Defendants also owe Colony Hills $5,000.00 per each month of the "hold period" and 20 percent of the gross gain in the fair market value of the Properties based on the formula set forth in the 2014 MOU.

65. Colony Hills' Transactional Expenses and Internal Costs amounted to at least $2.6 million.

66. Despite the conveyance of the Purchase Rights to Defendants, and the subsequent exercise of those rights by Defendants, through which Defendants have realized material gains, Colony Hills has not been properly compensated.

67. Defendants have failed to fully compensate Colony Hills in accordance with the CHC-JPC Agreement and as outlined in the 2014 MOU, and have unjustifiably disregarded Colony Hills' demands for payment.

## COUNT ONE
### (Breach of Contract)

68. Colony Hills repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

69. Colony Hills and Defendants entered into the CHC-JPC Agreement, which constitutes a valid and enforceable contract and key terms of which are outlined in the 2014 MOU.

70. Colony Hills performed its obligations under the contract by giving Defendants the Purchase Rights to the Properties.

71. Defendants breached the contract by, among other things, failing to pay an additional $3.2 million to Colony Hills, make monthly payments of $5,000 during the "hold period," and pay 20 percent of the gross gain in the fair market value of the Properties based on an agreed upon formula.

72. As a result of Defendants' breach, Colony Hills has suffered damages, including but not limited to the value of the payments listed above as well as the Transactional Expenses and Internal Costs.

## COUNT TWO
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

73. Colony Hills repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

74. Colony Hills and Defendants entered into the CHC-JPC Agreement, which

constitutes a valid and enforceable contract and key terms of which are outlined in the 2014 MOU.

75. Defendants acted in a manner the effect of which was to deprive Colony Hills of their right to receive the benefits of the contract.

76. Among other things, Defendants unilaterally declared the TPI Compensation Agreement as having no force and effect and then failed to negotiate a new agreement concerning Colony Hill's compensation.

77. As a result of Defendants' breach, Colony Hills has suffered damages, including but not limited to the value of the payments due under the CHC-JPC Agreement and 2014 MOU, as well as the Transactional Expenses and Internal Costs.

## COUNT THREE
### (Fraudulent Inducement)

78. Colony Hills repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

79. Defendants made representations of material facts.

80. Among other things, Defendants promised to pay substantial amounts to Colony Hills in exchange for the Purchase Rights to the Properties.

81. Among other places, such promises and representations were made in the CHC-JPC Agreement, the 2014 MOU, and the JPC LOI, as well as in email and verbal correspondence between the parties.

82. These promises and representations were false.

83. Defendants knew that they were false.

84. The purpose of Defendants' misrepresentations was to induce Colony Hills' reliance.

12

85. In fact, Colony Hills did justifiably rely on Defendants' misrepresentations in giving the Purchase Rights to Defendants and incurring the Transactional Expenses and Internal Costs, among other things.

86. Colony Hills' justifiable reliance on Defendants' misrepresentations resulted in a detriment to Colony Hills, including but not limited to foregoing the right to purchase the Properties themselves, foregoing the gains that would be realized from ownership of the Properties, and incurring the Transactional Expenses and Internal Costs without any corresponding benefit.

87. Colony Hills would not have agreed to give the Purchase Rights to Defendants but for their fraudulent inducement.

## COUNT FOUR
### (Unjust Enrichment)

88. Colony Hills repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

89. The relationship between Colony Hills and Defendants was sufficiently close that it could have caused, and in fact did cause, reliance or inducement.

90. Defendants were enriched, receiving benefits in the form of the Purchase Rights – which Defendants used to acquire the Properties – and the results of Colony Hills' expenditure of time, labor, money, and other resources in incurring the Transactional Expenses and Internal Costs.

91. Defendants also were enriched by the absence of any broker's fees or commissions that they had to pay.

92. Defendants were enriched at Colony Hills' expense.

93. Among other things, Defendants failed to fully compensate Colony Hills for the

13

Purchase Rights.

94. Colony Hills also expended millions of dollars through the Transactional Expenses and Internal Costs, which were incurred in anticipation of the sale of the Properties.

95. It is against equity and good conscience to permit Defendants to retain their benefits without compensating Colony Hills.

## COUNT FIVE
### (Quantum Meruit)

96. Colony Hills repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

97. Colony Hills performed services in good faith, including but not limited to the giving of the Purchase Rights to Defendants and the services performed in incurring the Transactional Expenses and Internal Costs.

98. Defendants accepted the services performed by Colony Hills. Indeed, they exercised the Purchase Rights to acquire the Properties and obtain the gains deriving from such ownership.

99. Colony Hills had an expectation of compensation, as evidenced by the 2014 MOU, the JPC LOI, the Sale Agreement, the TPI Compensation Agreement, and the Promissory Notes, among other things.

100. The reasonable value of the services performed by Colony Hills, and for which Defendants have not compensated Colony Hills, is at least $2.6 million.

## COUNT SIX
### (Promissory Estoppel)

101. Colony Hills repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

102. Defendants made a clear and unambiguous promise that it would compensate Colony Hills for the transfer to it of the Purchase Rights to the Properties.

103. The amount and key terms of such compensation were memorialized in the 2014 MOU.

104. Colony Hills reasonably relied on that promise in giving the Purchase Rights to Defendants and in continuing to incur the Transactional Expenses and Internal Costs.

105. As a result of such reliance, Colony Hills has suffered damages, including but not limited to the value of the payments due under the CHC-JPC Agreement and 2014 MOU, as well as the Transactional Expenses and Internal Costs.

## COUNT SEVEN
### (Equitable Estoppel)

106. Colony Hills repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

107. Defendants made misrepresentations of and/or concealed material facts.

108. Among other things, Defendants promised to pay substantial amounts to Colony Hills in exchange for the Purchase Rights to the Properties.

109. Among other places, such promises and representations were made in the CHC-JPC Agreement, the 2014 MOU, and the JPC LOI, as well as in email and verbal correspondence between the parties.

110. Defendants intended for Colony Hills to rely upon such conduct.

111. During all relevant times, Defendants knew the real facts – that it had no intention of honoring their promises.

112. Colony Hills, on the other hand, had no knowledge of Defendants' true intent.

113. Colony Hills reasonably relied upon Defendants' misrepresentations and

concealment of material facts.

114. As a result, Colony Hills prejudicially changed its position by giving the Purchase Rights to Defendants and foregoing the opportunity to purchase the Properties themselves and thereby obtain the gains to be derived from such ownership.

115. Colony Hills has suffered damages, including but not limited to the value of the payments due under the CHC-JPC Agreement and 2014 MOU, as well as the Transactional Expenses and Internal Costs.

**WHEREFORE**, Colony Hills demands that judgment be rendered against Defendants, jointly and severally, for actual damages, consequential damages, interest due and owning, attorneys' fees and costs, and such other relief as the Court deems just and equitable.

**CALCAGNI & KANEFSKY LLP**
One Newark Center
1085 Raymond Blvd., 14th Floor
Newark, New Jersey 07102
(T) 862-397-1796
(F) 862-902-5458
eric@ck-litigation.com

By: s/ Eric T. Kanefsky
      Eric T. Kanefsky, Esq.

Dated: August 23, 2017