LETTER OF INTENT

February 11, 2015

Aron Puretz
PF Holdings LLC
1315 Ave J
Brooklyn NY 11230

RE: Purchase of the:

FARH Portfolio
Seven Properties
Indianapolis, IN

We the undersigned, nominee(s) and/or assignee(s) (hereinafter referred to as "Purchaser") are prepared to purchase from TPI Communities I, LLC ("TPIC"), and its nominee(s), and/or assignee(s) (hereinafter referred to collectively as "Assignors"), all of its interest in that certain Contract for Sale and Purchase of the Properties dated April 14, 2014 (the "Purchase Contract") by and among TPIC, as buyer, and Foundation for Affordable Rental Housing, Inc. ("FARH"), FARH-South, FARH-Fox Lake Affordable Housing, Inc. ("FARH-Fox Lake") and FARH-West Affordable Housing, Inc. ("FARH-West), each a Delaware non-profit 501(c)(3) corporation (collectively, the "Sellers"), subject to the terms and conditions hereinafter set forth.

1.    ASSUMPTION FEE

Purchaser shall pay TPIC a fee of $4,575,000 (hereinafter referred to as "the Assumption Fee") for the Assignment of the Purchase Contract to Purchaser, and will have the Purchase Contract assigned to a new nonprofit entity of the Purchaser's choice. The contract price for the seven properties listed in Exhibit A attached hereto (hereinafter referred to collectively as the "Properties") is approximately $85,138,837, which includes a cash payment of Ten Million One Hundred Thousand Dollars ($10,100,000) plus the outstanding debt secured by the Properties, and it is assumed that the price will be slightly reduced as the mortgages are amortized; and further reduced by an amount equal to the reserves held by current mortgage holder. TPIC and Purchaser hereby acknowledge and agree that the Assignment of the Purchase

Contract to Purchaser is and shall be subject to consent and approval of Sellers. The Assumption Fee is payable as follows:

a) $500,000 (hereinafter referred to as "the Initial Deposit") to be deposited in trust with Madison Title Agency immediately upon signing a binding agreement incorporating the terms of this Letter of Intent and providing the terms and conditions for the assignment of the Purchase Contract by TPIC to PF Holdings (the "Assumption Agreement"). The Initial Deposit shall be held in an interest- bearing account, with interest in favor of Purchaser.

    i  $150,000 of the Initial Deposit shall be non-refundable and shall be released to TPIC or its nominee upon the execution of the Assumption Agreement, and as such, the Assignor will assign its rights to the earnest money deposit under the contract to purchase the Properties being assigned to Purchaser. The $150,000 shall be credited against the Assumption Fee if and when the closing of the Purchase Contract occurs.

    ii  The $350,000 balance of the Initial Deposit shall  become non-refundable upon (A) the Sellers' execution of a Fifth Amendment to the Purchase and Sale Agreement wherein Purchaser shall replace TPIC as the "Buyer" under the Purchase Contract, together with(B) the earlier of the closing of the Purchase Contract or  termination of the Purchase Contract (for any reason, including but not limited to default by the Purchaser, but excluding Sellers' failure to fulfill all requirements for Purchaser to close title under the Purchase Contract). The $350,000 balance of the Initial Deposit shall be credited against the Assumption Fee if and when the closing of the Purchase Contract occurs.

b) At the closing of the Purchase Contract, the Purchaser will pay TPIC the balance of the Assumption Fee (or $4,075,000) less the amount loaned back to Purchaser pursuant to subparagraph c) below, for a total cash payment of $3,650,000.

c) The sum of $425,000 will be loaned by the Assignor to the Purchaser at a rate of LIBOR plus 5% per annum fixed as of the closing date of the Purchase Contract for a period of five years, self liquidating.

d) Should Purchaser fail to close on the Purchase Contract on or before May1, 2015, but is granted an extension of time to close by the Sellers, Purchaser shall pay TPIC one hundred twenty five thousand dollars ($125,000) semi-monthly on the first day and 15th day of each calendar month until the earlier of the date of closing of the Purchase Contract or termination of the Purchase Contract.  The semi-monthly $125,000  payment(s) shall be applied as a credit against the $4,075,000 balance of the Assumption Fee if the Purchase Contract closes; however, if Purchaser fails to

close on the Purchase Contract by June 30, 2015, or if the Sellers terminate the Purchase Contract prior to a closing due to Purchaser's default, then the $125,000 weekly payments made to TPIC shall become non-refundable.

2.    INDEMNIFICATION UPON TERMINATION OF PURCHASE CONTRACT

If the Purchase Contract terminates by its terms or by action of the Sellers prior to a closing, Purchaser shall fully indemnify, hold harmless and defend TPIC and Colony Hills Capital, and their respective managers, directors, officers, employees, agents, stockholders, members and affiliates, from and against all claims, demands, actions, suits, damages, liabilities, losses, settlements, judgments, costs and expenses (including but not limited to reasonable attorneys' fees and costs) brought by or on behalf of the Sellers which arise out of or relate to the Purchase Contract, including without limitation any alleged breach of a representation or warranty contained therein or breach or default of any covenant or other obligation or duty contained therein, whether or not the claim has merit.

3.    MANAGEMENT FEE

TPIC or its nominee will be paid an asset management fee equal to $5,000 per month for 60 months from the date of the closing of the Purchase Contract.

4.    BUYOUT TERM

TPIC or its nominee shall have 10% non-controlling ownership in the management company that will manage the Properties for the Purchaser, and Purchaser shall not cancel or change the management company unless or until the buyout described in this section 4 is satisfied. At the end of year 5 (60 months) after closing of the Purchase Contract, the Purchaser shall   buy out the Assignor's ownership interest in the management company that will manage the Properties for the Purchaser, on the terms set forth in one of the following two alternatives:

OPTION A: An amount equal to 20% of the gross gain in fair market value of the Properties over the $90,138,837 purchase price (the "Buyout Price") as allocated across the  Properties as itemized in Exhibit A hereto. The fair market value will be determined by taking an average of the highest 2 out of 3 separate, arms length appraisals or Broker Opinion of Value. The 3 sources of the appraisals will be selected as follows: Purchaser will select one source, TPIC or its nominee will select one source, the two sources selected by Purchaser and TPIC or its nominee will agree on the third source. The Buyout Price will be determined six (6) months prior to the end of the five year term which begins at the date of the closing of the Purchase Contract (the "Appraisal Date"). The Buyout Price will be payable in installments of up to 60 months from the Appraisal Date and bear interest at the rate per annum of 5% above LIBOR;

provided, however, if the one or more of the Properties is sold prior to the Appraisal Date, the Buyout Price for that property shall be paid to TPIC or its nominee in a single lump sum payment on the date of closing of that transaction. Should Purchaser fail or refuse to pay the Buyout Price, Purchaser will designate and facilitate TPIC or its nominee to become manager of the seven Properties being purchased by Purchaser under the Assumption Agreement.

Or

OPTION B: Option B may only be exercised by Purchaser during the first year (i.e., 365 days) following the closing of the Purchase Agreement. Assignor and Purchaser hereby estimate that the fair market value of the Properties being assigned to Purchaser pursuant to the Assumption Agreement is $90,138,837 as of the date of this Letter of Intent, allocated across the Properties as itemized in Exhibit A attached hereto. In addition to the Assumption Fee, Purchaser shall pay to TPIC a "Buyout Amount" of $3,215,020, which amount represents the net present value of eight million dollars ($8,000,000) (which is the parties' estimate of 20% gain in fair market value of the Properties over the $90,138,837 purchase price in five years from now), discounted at twenty percent (20%) over five years. This Buyout Amount shall be payable to TPIC in monthly installments over five years commencing on the second anniversary of the closing date of the Purchase Contract and bear interest at the rate per annum of LIBOR plus 5%. Should Purchaser fail to pay TPIC any installment on the Buyout Amount, Purchaser shall designate and facilitate TPIC or its nominee to become manager of the seven properties being purchased by Purchaser under the Assumption Agreement.

In either Buyout scenario (Option A or B above), if average occupancy of the Properties in any 3 consecutive month period falls below 85% of market conditions Purchaser shall designate and facilitate TPIC or its nominee to become manager of the seven properties being purchased by Purchaser under the Assumption Agreement.

5.    SOLICITATION AND NONCIRCUMVENTION

(a) From the date of this LOI, the Assignor shall not list or market the Properties for sale, nor entertain or solicit any letters of intent, offers, or other similar documentation regarding the sale of the Properties to any third parties.

(b) In consideration of the Assignor bringing this opportunity to Purchaser, Purchaser agrees not to participate, directly or indirectly, in any transaction relating to any of the seven properties identified in the Purchase Contract, whether as purchaser, lender, consultant, affiliate, co-venturer, partner or in any other capacity, for a period of two (2) years from the date of execution of this Letter of Intent.

6.     COMMISSIONS/FINDER'S FEES; ASSIGNOR'S DUE DILIGENCE EXPENSES

Purchaser shall not be responsible for the payment of commissions due to any of the brokers.

7.     REVISION OF FIFTH AMENDMENT

Assignor and Purchaser shall address Items 1 -5 regarding the Fifth Amendment set forth in Jeffrey Karp email dated February 4, 2015 at 8:04 AM under heading FARH – Indianapolis Purchase.

8.     ACCEPTANCE

This counter Letter of Intent shall be open for acceptance by PF Holdings until the 11th day of February, 2015 at 11:59 p.m. Eastern Standard Time. Yours truly,


Buyer:

PF Holdings, LLC

_____
By: Aaron Puretz
Managing Member


Accepted on the 11th day of February 2015.


Seller:

_____
By: David Kaufman
Managing Member          2/12/15