PF HOLDINGS LLC
1223 East 13th St.
Brooklyn NY.



## LETTER OF INTENT ("LOI")

1. **PROPERTIES:** Seven (7) affordable housing apartment complexes comprising 2,517 low income residential units located in Indianapolis, Indiana.

2. **GRANTOR ENTITIES (Deed Holders for the Properties):**
   Foundation for Affordable Housing, Inc.;
   FARH-Fox Lake Affordable Housing, Inc.;
   FARH- South Affordable Housing, Inc.; and
   FARH- West Affordable Housing, Inc.;
   each a Delaware nonprofit corporation.

3. **SELLERS:**
   Foundation for Affordable Housing, Inc.,
   holder of 100% of the Membership Interests in FARH-Fox Lake Affordable Housing, Inc., FARH- South Affordable Housing, Inc., and FARH- West Affordable Housing, Inc.; and
   FSR-Tennessee, Inc., a Delaware nonprofit corporation,
   holder of 100% of the Membership Interests in Foundation for Affordable Housing, Inc.

4. **PURCHASER:** Pure Charity Fund, a Georgia nonprofit corporation. For purposes of this LOI, reference to Purchaser shall include Aron Puretz and Chaim Puretz and entities they own and/or control.

5. **ASSETS TO BE SOLD:** One Hundred Percent (100%) of the Membership Interests in the Grantor Entities ( the "Assets") free of liens and encumbrances, except Purchaser is purchasing the Assets subject to the Financing.

6. **METHOD OF TRANSFER OF OWNERSHIP FROM GRANTOR ENTITIES TO PURCHASER:** The Board of Directors of each Grantor Entity shall resign as Directors by means of Membership Transfer documents and Purchaser shall appoint the new Board of Directors for each Grantor Entity subject to the name of each Grantor Entity being simultaneously changed to eliminate any reference to Foundation for Affordable Housing or FARH.

7. **PURCHASE PRICE:** **(A)** Ten Million One Hundred Thousand Dollars ($10,100,000.00). **minus (B)** the greater of (i) all Escrow and Reserve amounts held by or on behalf of Lenders in connection with such Financing as of the Closing Date and (ii)

**PF HOLDINGS LLC**
1223 East 13th St.
Brooklyn NY.



One Million Five Hundred Fifty-Nine Thousand Four Hundred Eighty-Eight Dollars ($1,559,488.00).

8. **CONTRACT OF SALE:** Agreement for the Sale of the Membership Interests in the Grantor Entities (the "Contract of Sale"). There will not be Deeds. There will be Membership Transfers.

9. **LOI ERNEST MONEY:** Simultaneously with the making of this LOI, Purchaser shall deliver to Greystone by wire transfer of immediately available federal funds the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) (the "LOI Ernest Money") which Greystone shall deposit in a separate interest bearing account. If and when the Contract of Sale is entered into the LOI Ernest Money and interest earned thereon shall be automatically deemed to be the Deposit under the Contract of Sale as provided for below in Paragraph 10 (Deposit) of this LOI. The LOI Ernest Money is a "hard" payment to Sellers. Purchaser shall not be entitled to a return of the LOI Ernest Money unless Sellers or any Greystone entity (collectively, "Sellers") default under the terms of this LOI by failing to act in accordance with the terms and conditions of this LOI or if any of the information set forth in this LOI relating to Sellers is hereafter deemed to be inaccurate.

10. **DEPOSIT:** Simultaneously with the full execution and delivery of the Contract of Sale the LOI Ernest Money [Two Hundred Fifty Thousand Dollars ($250,000.00) plus interest earned thereon] delivered to Sellers in accordance with the terms of Paragraph 9 of this Letter of Intent set forth immediately above shall convert to the Deposit under the Contract of Sale and Greystone shall continue to hold the Two Hundred Fifty Thousand Dollars ($250,000.00) plus interest, if any, on behalf of Sellers in an interest bearing account in accordance with the terms of the Contract of Sale as the Deposit with the ultimate party to be entitled to ownership of such Deposit plus interest being: (i) Sellers, upon (a) Closing under the Contract of Sale (the "Closing") or (b) termination of the Contract of Sale due to the default of Purchaser under the Contract of Sale; or (ii) Purchaser, upon termination of the Contract of Sale due to Sellers' failure to fulfill Sellers' closing obligations under the Contract of Sale. The Deposit under the Contract is the same money as the LOI Ernest Money under this LOI (i.e., Purchaser only delivers a cumulative amount of Two Hundred Fifty Thousand Dollars ($250,000.00) to Seller prior to Closing).

11. **CLOSING DATE:** On such date designated by Purchaser subject to Sellers' approval which approval shall not be unreasonably withheld, conditioned or delayed on or about a date ninety (90) days subsequent to the date of the Contract of Sale (the "Closing Date").

**PF HOLDINGS LLC**
1223 East 13th St.
Brooklyn NY.



12. **ASSETS AND LIABILITIES:** All assets of the Grantor Entities as of the Contract Date (or as otherwise provided for in this LOI) shall remain the property of the Grantor Entities (with the Membership Interests of the Grantor Entities being transferred to Purchaser at Closing. All liabilities of the Grantor Entities as of the Closing Date, excluding the Financing, shall be fully satisfied, dismissed, released and removed from record at or prior to Closing.

13. **GREYSTONE INDEMNIFICATION:** A Sellers' Closing Requirement shall be delivery of an indemnification from Greystone &Co., Inc. Please note that it has been determined that a Real Property Asset Transfer (i.e., transfer of real property by deed) would cause the termination of tax exempt status for the Properties. Therefore, Greystone's "Non-Real Property" Style Indemnification shall be provided as follows:

"In consideration of Pure Charity Fund ("**Pure**") [or Pure's designee(s)] accepting the membership interest in, and substituting as the member of, by means of appointing the board of directors or otherwise, each of Foundation for Affordable Rental Housing, Inc. ("**FARH**"), FARH-Fox Lake Affordable Housing, Inc. ("**FARH-Fox Lake**"), FARH-South Affordable Housing, Inc. ("**FARH-South**"), and FARH-West Affordable Housing, Inc. ("**FARH-West**") (collectively, the "**Companies**"), each a Delaware non-profit 501(c)(3) corporation, Greystone & Co., Inc. ("**Greystone**") does hereby agree and promise to indemnify, defend and hold Pure, and their respective affiliates, members, managers, officers, employees, principals and agents (collectively, the "**Pure Parties**"), harmless, at the sole expense of Greystone, for the period of time up to and including [THE CLOSING DATE], from any injury, damage, monetary obligation, liability, cost and expense, including attorneys' fees, that arise from (a) the Companies' and the members of the Companies' acts or omissions, or (b) the Companies' and the members of the Companies' responsibilities or liabilities, including without limitation responsibility to make any payment, but specifically excluding amounts outstanding regarding the bonds and mortgages listed on Schedule 1 attached to and made a part of this Indemnification, and Greystone shall pay all expenses, attorneys' fees, losses, liabilities, court costs, and settlements by the Pure Parties arising therefrom, whether or not there has been any wrongdoing, negligence, breach of contract, error or omission on the part of the Companies or the members of the Companies."

14. **TPI COMMUNITIES I, LLC ("TPI"):** Sellers and Purchaser acknowledge and agree that neither party desires to enter into a transaction which excludes TPI from payment of compensation in an amount and manner that is satisfactory to TPI. Therefore: (a) a



**PF HOLDINGS LLC**
1223 East 13th St.
Brooklyn NY.

condition of Sellers and Purchaser entering into the Contract of Sale is a compensation agreement by and between Purchaser and TPI (the "TPI Compensation Agreement") which provides for payment to TPI at Closing (the "TPI Compensation"); and (b) a condition of Closing shall be simultaneous payment to TPI of the TPI Compensation. Attached hereto as **Exhibit "A"** is a pro forma TPI Compensation Agreement.

15. **BROKERAGE COMMISSIONS:** A provision of the Contract of Sale shall be Chaim Puretz's agreement to indemnify, defend and hold harmless Sellers, Grantor Entities and TPI against the claims of any and all brokers for brokerage commission(s) in connection with the Sale.

16. **PRIOR CONTRACT:** Sellers and Purchaser acknowledge the existence of the Agreement of Purchase and Sale dated April 14, 2014 between Grantor Entities and TPI covering the sale of the Properties which prior contract (the "Prior Contract") has terminated. A provision of the TPI Compensation Agreement shall be TPI's recognition that the Prior Contract has terminated. To the extent applicable the terms of the Prior Contract shall be incorporated into the Contract of Sale.

17. **PROPERTY MANAGEMENT:** If requested by Purchaser to do so Sellers agree to cause a Greystone entity that specializes in property management (the Greystone Property Manager") to manage the Properties for one (1) year under the terms of Purchaser's standard management agreement at Purchaser's standard compensation rates. Notwithstanding language of the foregoing sentence, Purchaser shall be free to self-manage the Properties or hire any property manager Purchaser so designates whether or not such property manager is the Greystone Property Manager.

18. **CONFIDENTIALITY:** If and when Sellers or Purchaser receives Confidential Information (for purposes of this Paragraph 18, the "Receiving Party"), the Receiving Party agrees to keep such Confidential Information confidential. "Confidential Information" means all information, regardless of the form in which such information is communicated or maintained, concerning the transaction covered by this LOI that is furnished by the disclosing party (i.e., either Sellers or Purchaser) (the "Disclosing Party ") to the Receiving Party, together with all originals or copies of all notes, reports, analyses, compilations, data, studies and other files or other documents or materials, whether prepared by Receiving Party or others, which are based on, contain or otherwise reflect such information. Notwithstanding the foregoing, the term "Confidential Information" does not include information that (i) is or becomes available to the public,

**PF HOLDINGS LLC**
1223 East 13th St.
Brooklyn NY.



other than as a result of a disclosure by the Receiving Party in breach of this Paragraph 18; (ii) was in possession of Receiving Party or has become available to Receiving Party on a non confidential basis, directly or indirectly, from a source other than Disclosing Party, provided that the source of such information is not known by Receiving Party to be bound prohibited from transmitting the information to Receiving Party by a contractual, legal or fiduciary obligation; or (iii) is independently developed by Receiving Party without reference to the Confidential Information or any derivative thereof. TPI shall be deemed to be a Disclosing Party and a third party beneficiary to this Paragraph 18.

19. **NON-BINDING; SEPARATE COUNTERPARTS; ENFORCEABLE SIGNATURES:** This LOI expresses the intentions of the parties executing this LOI but is not binding in any manner or way except for the terms of Paragraph 9 (LOI Ernest Money). This LOI may be executed in counterparts (i.e., separate signature pages) and each counterpart so executed by each party to this LOI shall constitute an original, all of which when taken together shall constitute one LOI, notwithstanding that all the parties are not signatories to the same counterpart. Any signature page of this LOI may be detached from any counterpart of this LOI and may be attached to another counterpart of this LOI without impairing the legal effect of any of the signatures on any of the counterparts of this LOI. Scanned, facsimile and digital signatures are enforceable with the same enforceability as, and shall be deemed to be, original signatures.

[No additional text on this page. The signature page follows.]

PF HOLDINGS LLC
1223 East 13th St.
Brooklyn NY.



The undersigned parties have made this LOI as of the date first above written.

**[SELLER ENTITY]**

By: _____
Name:
Title:

**[PURCHASER ENTITY]**

By: ____*[signature]*____
Name: Aron Puretz
Title: Authorized Signator

6

PF HOLDINGS LLC
1223 East 13th St.
Brooklyn NY.



## Exhibit "A"

## TPI COMPENSATION AGREEMENT

PF HOLDINGS LLC
1223 East 13th St.
Brooklyn NY.



## TPI COMPENSATION AGREEMENT

This Compensation Agreement (this "Agreement") dated _____by and between Pure Charity Fund ("Payor") and TPI Communities I, LLC ("Payee").

In recognition of Payee's status as Contract Vendee under that certain Agreement of Purchase and Sale dated April 14, 2014 by and between _____(collectively, "FARH") and Payee covering those properties listed on **Schedule 1** attached to and made a part of this Agreement and Payor's acknowledgement that such status deserves to be recognized by this Agreement, Payor agrees that if Payor succeeds to ownership of 100% of the membership interests of FARH (the "Membership Interests"), Payor shall pay Payee Two Million Nine Hundred Thousand Dollars ($2,900,000.00) simultaneously with the closing of the transfer of the Membership Interests to Payor.  In the event that Payor does not succeed to ownership of the Membership Interests Payee waives any and all rights to be paid any amount for any reason by Payor, including without limitation any default by any party (i.e., Payor or any other party) under any agreement covering Payor's succeeding to ownership of the Membership Interests.

[No additional text on this page.  Signature page follows.]

PF HOLDINGS LLC
1223 East 13th St.
Brooklyn NY.



      Payor and Payee have made this Compensation Agreement as of the date first above written.

**[PAYOR]**

By: _____
Name:   Aron Puretz
Title:   Authorized Signator

**[PAYEE]**

By: _____
Name:
Title:

PF HOLDINGS LLC
1223 East 13th St.
Brooklyn NY.



## Schedule 1

## THE PROPERTIES